UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|   |   |   |
|---|---|---|
| ROBERT MOLL, | : | NO. 1:06-CV-00046 |
| Plaintiff, | : | |
| v. | : | **OPINION AND ORDER** |
| TYCO HEALTHCARE, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 37), Plaintiff's Memorandum in Opposition to Defendant's Motion (doc. 45), and Defendant's Reply Memorandum in Further Support of its Motion (doc. 50). The Court held a hearing on this motion on June 20, 2007. For the reasons stated herein, the Court DENIES Defendant's motion.

**I. Background**

The facts of this case, as taken from the pleadings, depositions, and motions, are as follows. Plaintiff, Robert Moll, born November 3, 1954, was hired by Defendant, Tyco Healthcare, in 1998, to work as a Senior Software Quality Engineer (doc. 37). In March, 2000, Plaintiff was promoted to Senior Electrical Engineer. In this position Plaintiff worked on the OptiStat injection project, and then in late 2002, was assigned to the OptiVantage project (doc. 45). At relevant times, David Brooks ("Brooks") was Manager of Engineering and Plaintiff's direct supervisor, Robert

Ziemba ("Ziemba") was Director of Research and Development, Karen Coulson ("Coulson") was Senior Director of Research and Development, and Forrest Smith ("Smith") was the facility's Human Resources Manager (doc. 37). In performance reviews of Plaintiff during 2002 and 2003, reviewers consistently noted areas where Plaintiff needed improvement, though overall, Plaintiff's work performance was rated as meeting expectations (Id.).

The OptiVantage project on which Plaintiff was staffed changed its focus in March or April, 2003 (doc. 45). By January, 2004, Brooks was concerned that the project was not going to meet its initial November, 2004 deadline (docs. 37, 45).

In April, 2004, Plaintiff injured his foot, which led to a serious strep infection requiring a skin graft and several surgeries (Id.). Plaintiff qualified for and took Family Medical Leave Act ("FMLA") leave from April 20, 2004, to June 14, 2004 (doc. 37). Defendant states that while Plaintiff was on leave, issues related to his performance on the OptiVantage project were discovered (Id.).

After his return from leave in June, 2004, until his termination in December, 2004, Plaintiff was intermittently absent due to physical therapy and doctor's appointments, although he did not specifically request further FMLA leave (docs. 37, 45). Following Plaintiff's return, in early August, 2004, the software engineers on the OptiVantage project were informed that they were

expected to work eighty (80) hour work weeks (doc. 37).  Plaintiff states that he worked as many hours as was possible, but occasionally experienced joint pain and swelling in his foot (doc. 45).  In September, 2004, Plaintiff's doctor wrote a note limiting him to nine hours of work, which Plaintiff gave to the Human Resources Department and to Brooks (Id.).

At some point Brooks instructed Henry Rosche, another software engineer, to take two days to evaluate Plaintiff's software and report any deficiencies to Brooks (Id.).  While Ziemba recalls that Rosche found significant concerns with the software model, Rosche states he found no significant deficiencies (Id.).  Defendant states that Brooks became increasingly concerned with Plaintiff's work on the OptiVantage project, and met with Ziemba, Smith, and Coulson, to share his concerns (doc. 37).  At this meeting, in addition to performance problems, Brooks and Ziemba raised concerns about Plaintiff's attendance (doc. 37).  Coulson suggested termination, however, consistent with Defendant's disciplinary policies, the group decided to place Plaintiff on a Performance Improvement Plan ("PIP") to "communicate his performance issues, provide measurable objectives and offer a realistic, reasonable way Moll could retain his employment" (Id.).

In October, 2004, Defendant placed Plaintiff on a PIP, the day after he returned from a short vacation for which he had received approval (docs. 37, 45).  The PIP was to be in effect for

twelve (12) weeks, but stated that Plaintiff's employment could be terminated at any time if due dates were missed or the plan's objectives were not met (doc. 37). Plaintiff reviewed and signed the PIP (Id.). Plaintiff states that he did not have the authority to resolve several of the tasks listed on the PIP (doc. 45). Plaintiff met with Brooks regularly to discuss his progress (doc. 37). On November 3, 2004, Brooks issued an addendum to the PIP which adjusted tasks and deadlines (Id.).

On December 1, 2004, Plaintiff complained to Tyco's Ombudsman, Randy Barnholz, about the long hours, and stated that he felt he had been placed on the PIP and was being targeted for termination because he could not work overtime (Id.). Defendant states that neither Brooks, Ziemba, Smith, nor Coulson had knowledge of Plaintiff's complaints (Id.).

On December 3, 2004, Plaintiff informed Brooks that he intended to keep a doctor's appointment on December 8, 2004 (doc. 45). On December 7, 2004, Brooks reviewed Plaintiff's performance, and documented that Plaintiff failed to accomplish required tasks and complete PIP objectives (doc. 37). On December 10, 2004, Plaintiff met with Smith, Ziemba, and Brooks, and his employment was terminated (Id.). In response to an interrogatory, Plaintiff was informed that he was replaced by Mike Belleville, who was born in 1963 (doc. 45). Defendant contends that Plaintiff's tasks were split up among existing employees (doc. 37).

-4-

On January 26, 2006, Plaintiff filed a complaint against Defendant, alleging claims of FMLA retaliation, age discrimination in violation of state and federal laws, and wrongful discharge in violation of Ohio public policy (doc. 1).[1]

Thereafter, on April 9, 2007, Defendant filed the instant motion for summary judgment, arguing that Plaintiff cannot make out a _prima_ _facie_ case for either FMLA retaliation or age discrimination (doc. 37). Defendant further states that Tyco had legitimate, non-discriminatory reasons for Plaintiff's termination, and that Plaintiff cannot show that these reasons were pre-textual (_Id_.). For these same reasons, Defendant argues that Plaintiff cannot prove his Ohio public policy claim (_Id_.). The Court held a hearing on this motion on June 20, 2007.

## II. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; _see_ _also_, _e.g._, _Poller v. Columbia Broadcasting System, Inc._, 368 U.S. 464 (1962); _LaPointe v. United Autoworkers Local 600_, 8 F.3d 376, 378 (6th Cir.

---

[1] Plaintiff also alleged a violation of the Fair Labor Standards Act in Count IV of the Complaint, but later voluntarily dismissed that claim (doc. 33).

1993); <u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs</u>., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).   In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993), <u>quoting</u> <u>in</u> <u>part</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.   First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>also</u> <u>LaPointe</u>, 8 F.3d at 378; <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).   The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.   <u>See</u> <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page

numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. Analysis

Because Plaintiff's claims are based on circumstantial evidence, the sufficiency of both the FMLA retaliation and age discrimination claims will be analyzed under the burden-shifting model of McDonnell Douglass v. Green, 411 U.S. 792 (1973). At the outset, "the plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Bryson v. Regis Corp., 498 F.3d 561, 571 (6th Cir. 2007) (quoting Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 364 (6th Cir.2007)). If Plaintiff satisfies his prima facie showing, the burden shifts to Defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. Id. (citing Macy, 484 F.3d at 364). If Defendant succeeds, the burden shifts back to the Plaintiff to show that the Defendant's proffered reason is a pretext for unlawful discrimination. Id. While the burden of production shifts under the McDonnell Douglass model, Plaintiff retains the burden of persuasion throughout. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

In support of the motion, Defendant argues that Plaintiff cannot meet the prima facie burden for either FMLA retaliation or age discrimination (doc. 37). Even if he could prove a prima facie case on those claims, Defendant states that Tyco had legitimate,

non-discriminatory reasons for Plaintiff's termination, and that Plaintiff cannot show that these reasons were pretext (<u>Id</u>.). Further, for these same reasons, Defendant argues that Plaintiff can prove no public policy violation (<u>Id</u>.). The Court will address each argument <u>seriatum</u>.

### A. **Prima Facie** Case of FMLA Retaliation Claim

The FMLA prohibits an employer from retaliating against an employee who has used FMLA leave or for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a). To establish a <u>prima facie</u> case for retaliation, Plaintiff must show, 1) he availed himself of a protected FMLA right, 2) he was adversely affected by an employment decision, and 3) there was a causal connection between the exercise of a FMLA right and the adverse action. <u>Bryson</u>, 498 F.3d at 571; <u>Skrjanc v. Great Lakes Power Serv. Co.</u>, 272 F.3d 309, 314 (6th Cir. 2001).

Defendant argues that Plaintiff cannot show that he either engaged in any activity protected by the FMLA, or that there was a causal connection between any FMLA activity and Plaintiff's termination (doc. 37).[2]

---

[2] Defendant also argues that Plaintiff must establish, as a separate element of a <u>prima facie</u> case of FMLA retaliation, that relevant decision-makers knew of the protected activity. However, this is not a distinct prong of a <u>prima facie</u> case under Sixth Circuit case law, so the Court will not address it as such. <u>See</u> <u>Bryson</u>, 498 F.3d at 571. To the extent that, under the FMLA, 29 U.S.C. § 2612(e), there is a requirement that an employee must give reasonable notice of foreseeable leave, Defendant does not argue that Plaintiff's notice of leave was not adequate.

## 1. Plaintiff engaged in protected activity.

First, Defendant argues that Plaintiff did not engage in any activity protected by the FMLA (Id.).  Although Defendant concedes that Plaintiff took two months of FMLA leave from April, 2004, to June, 2004, Defendant argues that Plaintiff, in his deposition, seems to link his termination to the September 20, 2004 doctor's note and periodic doctor's appointments, which Defendant contends are not enough to trigger FMLA protection (Id., citing among others Mauder v. Metropolitan Transit Auto, 446 F.3d 574 (5th Cir. 2006)).  In response, Plaintiff contends that both the two month leave, as well as the follow-up doctor's appointments and physical therapy that resulted from the April, 2004 surgery, constitute protected activity under the FMLA (doc. 45).

Defendant counters that Plaintiff himself did not characterize any leave he took after his two month absence as FMLA leave, and "[t]hat managers at Tyco were aware of Moll's foot injury or follow up appointments does not equate, as a matter of law, to a request for intermittent leave" (doc. 50).

The Court does not find Defendant's argument well-taken. First, inasmuch as Defendant argues Plaintiff's deposition testimony is proof that Plaintiff took no further FMLA leave after June, 2004, the Court will not construe Plaintiff's characterization of his leave as dispositive, but instead consider the record as a whole.  See Collins v. U.S. Playing Card Co., 466

-11-

F.Supp.2d 954 (S.D.Ohio 2006); <u>Downs v. AOL Time Warner</u>, 2006 WL
162563 (S.D.Ohio, Jan. 20, 2006) (Sargus, J.) ("Whether Plaintiff
can establish pretext must be considered on the record as a whole,
not simply from one response Plaintiff gave on deposition.").  It
is undisputed that Plaintiff was granted, and took, two months of
FMLA leave ending in June, 2004.  That alone satisfies the
requirement that Plaintiff engaged in a protected activity.  In
addition, it is undisputed that Plaintiff gave Defendant notice of,
and took leave for, some doctor's and physical therapy appointments
between June, 2004, and Plaintiff's termination.

     The FMLA, in 29 U.S.C. § 2612 provides:

    (a) In general
    (1) Entitlement to leave
    Subject to section 2613 of this title, an eligible
    employee shall be entitled to a total of 12 workweeks of
    leave during any 12-month period for one or more of the
    following:
    ...
    (D) Because of a serious health condition that makes the
    employee unable to perform the functions of the position
    of such employee.

    (b) Leave taken intermittently or on reduced leave
    schedule
    (1) In general
    Leave under subparagraph (A) or (B) of subsection (a)(1)
    of this section shall not be taken by an employee
    intermittently or on a reduced leave schedule unless the
    employee and the employer of the employee agree
    otherwise. Subject to paragraph (2), subsection (e)(2) of
    this section, and section 2613(b)(5) of this title, leave
    under subparagraph (C) or (D) of subsection (a)(1) of
    this section may be taken intermittently or on a reduced
    leave schedule when medically necessary. The taking of
    leave intermittently or on a reduced leave schedule
    pursuant to this paragraph shall not result in a
    reduction in the total amount of leave to which the

-12-

employee is entitled under subsection (a) of this section beyond the amount of leave actually taken.

The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. 2611 (11).  Therefore, pursuant to these sections, and construing the facts most favorably to Plaintiff, the Court finds both Plaintiff's FMLA leave for his surgery, and the absences for follow-up appointments, when approved by his supervisors, could constitute protected FMLA activity.  29 U.S.C. § 2612(a)(1)(D) and (b).

### 2. Plaintiff can establish a causal connection

Defendant next argues that Plaintiff cannot establish a prima facie case because Plaintiff can show no causal connection between Plaintiff's FMLA leave and his termination (doc. 37). Defendant argues that Plaintiff's short term disability leave ending in June, 2004, is too remote from his December, 2004 termination to constitute evidence of a causal connection (Id., citing, among others, Clark County School District v. Breeden, 532 U.S. 268, reh'g denied 533 U.S. 912 (2001); Cooper v. City of North Olmsted, 795 F.2d 1265, 1276 (6th Cir. 1986); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004)).  Similarly, Defendant contends that there is no connection between Plaintiff's September, 2004 work restriction and his termination (Id.).

In response, Plaintiff argues that he has established a sequence of events, ending with giving Defendant notice of his need for leave to attend a doctor's appointment on December 3, 2004, which would allow a jury to find a causal connection based on temporal proximity alone (doc. 45). As further evidence of a casual connection, Plaintiff offers that both Brooks and Ziemba complained about Plaintiff's absences when they discussed their plans to terminate him (Id.). Finally, Plaintiff compares the circumstances in this case to those in Dage v. Time Warner Cable, 395 F.Supp.2d 668 (S.D. Ohio 2005) (Id.).

In Dage, where the lapse between the plaintiff's last FMLA leave and his termination was two months, the Honorable Susan Dlott found the temporal proximity in that case could be sufficient, by itself, to establish a causal connection. Dage, 395 F.Supp.2d at 676. Judge Dlott further found that the written disciplinary warnings the plaintiff received after taking FMLA leave, where he had not received such warnings before, could also be construed by a jury as evidence of retaliation. Id.

In reply, Defendant challenges the proximity of Plaintiff's FMLA leave to his termination, stating "nine (9) months elapsed from the time Moll took leave in April 2004 until his discharge in December 2004, and a full six (6) months elapsed from his time of return from leave" (doc. 50). Further, Defendant distinguishes the facts of this case from those in Dage, arguing in

-14-

that case the discipline was for arguably trivial matters, whereas here, Plaintiff's PIP was acknowledged by Plaintiff and addressed legitimate concerns (Id.).

As an initial matter, "[a] plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." Skrjanc, 272 F.3d at 315; Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir.2007) ("The burden of proof at the prima facie stage is minimal...."). The Sixth Circuit has previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection. Skrjanc, 272 F.3d at 314; Chandler v. Specialty Tires of Am., 283 F.3d 818, 826 (6th Cir.2002) (stating that, in the FMLA context, "[p]roximity in time can raise a prima facie case of retaliatory discharge"); Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555 (6th Cir.2004); DiCarlo, 358 F.3d at 421; Ford v. General Motors, 305 F.3d 545, 554-55 (6th Cir.2002). After Plaintiff returned to work in June, 2004, Plaintiff's injury required him to leave work to attend occasional doctor's and physical therapy appointments (doc. 45). According to Plaintiff, on December 3, 2004, he informed Brooks that he intended to attend a doctor's appointment on December 8, 2004, and was terminated on December 9 or 10, 2004. Construing the evidence in a light most favorable to Plaintiff, the Court finds that a jury could reasonably infer a "causal connection" between Plaintiff's FMLA leave-taking and his

termination. Therefore, a jury could find Plaintiff has established a _prima_ _facie_ case of FMLA retaliation.

### B. **Prima Facie** Case of Age Discrimination

Next, the Court turns to the sufficiency of Plaintiff's age discrimination claims. Both the Age Discrimination in Employment Act ("ADEA") and Ohio state law pursuant to Ohio Revised Code § 4112 prohibit discrimination on the basis of age in employment decisions. 29 U.S.C. §§ 621 _et_ _seq_., O.R.C. § 4112. In order to prevail on an indirect or circumstantial evidence theory of age discrimination, Plaintiff must first establish a _prima_ _facie_ case by proving that (1) he was over forty, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a substantially younger employee or additional evidence shows that the employer was motivated by Plaintiff's age in making its decision. _O'Connor v. Consolidated Coin Caterers Corp._, 517 U.S. 308 (1996). The _prima_ _facie_ case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." _Furnco Construction Corp. v. Waters_, 438 U.S. 567, 577 (1978). Establishment of the _prima_ _facie_ case in effect creates a presumption that the employer unlawfully discriminated against the employee. _Texas Dep't. Of Community Affairs v. Burdine_, 450 U.S. 248, 254 (1981).

-16-

Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination because he cannot show that he was either qualified for his position, or that "comparable, non-protected persons were treated more favorably" (doc. 37).

### 1. Plaintiff's qualification for his position.

Defendant first argues that to meet the qualification requirement, Plaintiff must show that he was performing at a level that met Defendant's legitimate expectations at the time of his dismissal (doc. 37, citing Lenzley v. D&B Corp., 2007 WL 1027281 (S.D. Ohio 2007)). Defendant contends that for over a year before his termination, Plaintiff was counseled and warned about deficiencies in his job performance, evidence that he was not qualified for his position (Id.).

In response, Plaintiff argues that under Sixth Circuit precedent, he need only demonstrate that he was objectively qualified for his position (doc. 45, citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575-76 (6th Cir. 2003); Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660 (6th Cir. 1999)). Plaintiff notes that in both Wexler and Cline, the Sixth Circuit held that when analyzing a prima facie case of discrimination, courts are not to use the defendant's articulated nondiscriminatory reasons for termination to assess whether the plaintiff was qualified for the position (Id., citing Wexler, 317 F.3d at 574; Cline, 206 F.3d at 660-61).

-17-

Plaintiff is correct. The focus at this stage of the analysis should be on Plaintiff's objective qualifications, such as his experience in the particular type of work and demonstrated possession of the required general skills. See <u>Wexler</u>, 317 F.3d at 575-76. As the <u>prima facie</u> case is not intended to be burdensome, searching analysis at this stage on whether a plaintiff is "qualified" is improper. <u>McCrory v. Kraft Food Ingredients</u>, No. 94-6505, 1996 U.S. App. LEXIS 26305 *14 (6th Cir. Oct. 3, 1996). Plaintiff earned an Associates Degree from Cincinnati Technical College and a Bachelors of Science in Electrical Engineering from The Ohio State University (doc. 45). Plaintiff worked as an engineer for several employers before being hired by Defendant in 1998 (<u>Id</u>.). Plaintiff was originally employed by Defendant as a Senior Software Engineer, and then promoted to Senior Electrical Engineer in March, 2002 (<u>Id</u>.). Drawing all reasonable inferences in favor of Plaintiff, the Court finds that a reasonable jury could conclude that Plaintiff was qualified for his position.

## 2. Replacement with Significantly Younger Employee

Defendant next argues that Plaintiff cannot establish the fourth prong of a <u>prima facie</u> case of age discrimination (doc. 35). Defendant contends that Plaintiff cannot show that "comparable, non-protected persons were treated more favorably" (<u>Id</u>., citing <u>Majewski v. ADP</u>, 274 F.3d 1106, 1115 (6th Cir. 2001)). Plaintiff counters that he need not show others were treated more favorably

-18-

if he can establish that he was replaced by a significantly younger person (doc. 45). Plaintiff contends that in answers to interrogatories and deposition testimony, Defendant identified Michael Belleville, born November 26, 1963, as Plaintiff's replacement (Id.). In response, Defendant argues that Plaintiff was not replaced by Mr. Belleville or anyone else, but instead his work was divided up among employees (doc. 50). Further, even if Mr. Belleville did replace Plaintiff, Defendant avers that at only nine years younger than Plaintiff, Mr. Belleville is not "substantially younger" (Id., citing Grosjean v. First Energy Corporation, 349 F.3d 332, 337-338 (6th Cir. 2003)).

The parties have presented conflicting evidence as to who, if anyone, replaced Plaintiff after his termination. Plaintiff sets forth answers to interrogatories and deposition testimony showing that Michael Belleville was Plaintiff's successor, while Defendant avers that Plaintiff's duties were assigned to other employees. Therefore, the Court finds a genuine issue of material fact remains on this issue, and summary judgment is not proper on the contention that Plaintiff cannot establish a prima facie case of age discrimination.

### C. Legitimate, non-discriminatory reason for firing.

Defendant next argues that even if Plaintiff can establish a prima facie case on either his FMLA retaliation or age discrimination claims, Plaintiff cannot show that Defendant's non-

discriminatory reasons for the termination were pretext (doc. 35). Therefore, under McDonnell Douglas, the burden now shifts to Defendant to rebut the presumption of discrimination by producing evidence that Plaintiff was terminated for a legitimate, nondiscriminatory reason. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Defendant need not persuade the Court that it was actually motivated by the proffered reasons. Id., citing Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 (1978). It is sufficient if Defendant's evidence raises a genuine issue of fact as to whether it discriminated against the Plaintiff. Id. To accomplish this, Defendant must clearly set forth, through the introduction of admissible evidence, the reasons for Plaintiff's termination. Id. at 255.

Here, Defendant contends that Plaintiff was terminated because of poor performance, missed deadlines, and his failure to meet the requirements of his PIP (doc. 37). The Court finds that Defendant's explanation meets this burden of production. Gagne v. Northwestern National Ins. Co., 881 F.2d 309, 313 (6th Cir. 1989) (poor performance is a legitimate reason for termination).

**D. Pretext**

Under McDonnell Douglas, if a defendant can present a legitimate reason for termination, the plaintiff must then counter with evidence that the articulated reason is a pretext to mask discrimination. McDonnell Douglas Corp., 411 U.S. at 804-06.

Pretext can be established "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

Defendant argues that Plaintiff's testimony "makes clear that the only basis for his scant allegations of age discrimination and/or FMLA retaliation are his suspicions, speculation, and unsupported subjective beliefs" (doc. 37). Further, Defendant contends that Plaintiff cannot establish pretext merely through a disagreement over Defendant's assessment of Plaintiff's performance (Id., citing among others, Trangler v. Rondy, Inc., 45 F.3d 431 (6th Cir. 1994); Beard v. Coca Cola, 55 F.E.P. Cases 765 (S.D. Ohio 1990)). Defendant asserts that Brooks, who was the ultimate decision-maker, honestly and in good faith believed that Plaintiff failed to meet the requirements of his PIP, and that Plaintiff's belief that he had met the PIP requirements is irrelevant (Id., citing White v. Simpson Industries, Inc. 1 Fed. Appx. 462 (6th Cir. 2001)).

In response, offering a variety of arguments, Plaintiff states that he has presented evidence which establishes that Defendant's articulated reasons either had no basis in fact, or did not motivate Defendant's decision (doc. 45). First, to show Defendant's reasons have no basis in fact, Plaintiff avers that the

evidence he presented to establish a causal connection between his use of FMLA leave and his termination could also be considered by the jury when determining that some reason other than his alleged poor performance motivated that decision (<u>Id</u>., citing <u>Cantrell v. Nissan North America</u>, 145 Fed. Appx. 99, 107, n.2 (6th Cir. 2005; <u>Dage</u>, 395 F.Supp.2d at 677, n.8)).   Moreover, to contradict Defendant's stated reason, Plaintiff points to the testimony of Henry Rosche, who stated that Plaintiff was a "qualified, dedicated, self-motivated employee" and that Plaintiff's work was "well-written, well documented and adhered to all industry standards" (<u>Id</u>.).   Quoting <u>Wexler</u>, Plaintiff argues the "reasonableness of an employers decision may be considered to the extent that such inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation" (<u>Id</u>., citing <u>Wexler</u>, 317 F.3d at 577).   Likewise, Plaintiff avers a jury could infer Plaintiff's performance was not inadequate from Defendant's failure to produce minutes of OptiVantage meetings (<u>Id</u>.).

To demonstrate that Defendant's articulated reason did not motivate Plaintiff's termination, Plaintiff attacks the basis for what Defendant cited as evidence of Plaintiff's poor performance (<u>Id</u>.).   Plaintiff argues that there were serious problems with the OptiVantage project before and after Plaintiff was staffed on it, and that no other software engineer was

-22-

terminated, or even disciplined for the project's failure (Id.). Plaintiff contends that a "jury could examine such evidence and conclude that some reason other than Moll's alleged performance problems motivated the decision to terminate his employment" (Id.). Finally, Plaintiff argues that Defendant's admitted displeasure with Plaintiff's inability to work some weekends could also raise a question of whether Defendant's articulated reason actually motived its decision (Id., citing Ercegovich, 154 F.3d at 356). In its reply, Defendant contests each of Plaintiff's arguments of pretext (doc. 50).

The Sixth Circuit in Singfield noted "Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain." 389 F.3d at 564 (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"). The Court in Singfield further stated that such factual determinations are frequently inappropriate for summary judgment. Id. (citing Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir.1985) (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment on the merits is ordinarily inappropriate once a prima facie case has been

-23-

established)).  Reviewing the various arguments of both parties, it is clear to the Court that there remains a genuine issue of material fact as to the basis for Plaintiff's termination.

As Defendant notes, Plaintiff may not rely solely on his prima facie evidence to establish pretext, but must introduce additional evidence which challenges the credibility of Defendant's proffered explanations.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1083-85 (6th Cir. 1994).  The Court finds Plaintiff has met this burden.  A jury could find Plaintiff has established pretext through the temporal proximity of Plaintiff's FMLA leave to both Plaintiff's placement on the PIP and eventually his termination, in combination with the evidence produced by Plaintiff which raises questions about the veracity of Defendant's stated reasons for termination, including evidence of Plaintiff's record of satisfactory performance, the state of the OptiVantage project, and evidence that Defendant considered Plaintiff's absences in its decision to terminate.

Therefore, construing the evidence in a light most favorable to Plaintiff, as it must do at this stage of the proceedings, the Court finds that Plaintiff has presented evidence sufficient to create a genuine issue of material fact that Defendant's proffered reasons did not actually motivate the decision to terminate Plaintiff, were insufficient to motivate the

decision to terminate him, or had no basis in fact.

     **E. Public Policy Claim**

     Finally, Defendant argues that Plaintiff's remaining claim for wrongful termination in violation of Ohio public policy fails for the same reasons that the FMLA retaliation claim and age discrimination claims are insufficient (doc. 37).  The Court did not find summary judgment proper on those claims, and for the same reasons, the Court finds summary judgment is not warranted on Plaintiff's Ohio public policy claim.

**IV. Conclusion**

     For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment (doc. 37).  Accordingly, the Court reschedules the Final Pretrial Conference for May, 8, 2008, at 2:00 P.M., and a four-day trial is tentatively set for June 10, 2008.


     SO ORDERED.


Dated: February 14, 2008    /s/ S. Arthur Spiegel
                                      S. Arthur Spiegel
                                      United States Senior District Judge